1   PAUL L. REIN, Esq. (SBN 43053)
    JULIE MCLEAN, Esq. (SBN 215202)
2   LAW OFFICES OF PAUL L. REIN
    200 Lakeside Dr., Suite A
3   Oakland, CA 94612
    Tel: (510) 832-5001
4   Fax: (510) 832-4787

5   Attorney for Plaintiff:
    ANDI MILLARD
6
    ANTOINETTE GARY MILLS, Esq. (SBN 113225)
7   AGM LAW OFFICES
    75 East Santa Clara Street, Suite 200
8   San Jose, CA 95113
    P.O. Box 1360 San Jose, CA 95109-1360
9   Tel: (408) 795-1515
    Fax: (408) 795-1519
10
    Attorney for Defendant:
11  PASSAGE TO INDIA RESTAURANT; TANEJA, INC.

12  KENNETH L. DZIESINSKI, Esq. (SBN 92158)
    BRAGG & DZIESINSKI
13  Embarcadero Center West
    275 Battery Street, Suite 1100
14  San Francisco, CA 94111
    Tel: (415) 273-6500
15  Fax: (415) 273-6535

16  Attorney for Defendant:
    THRUST IV INVESTMENTS LLC
17

18              UNITED STATES DISTRICT COURT
19             NORTHERN DISTRICT OF CALIFORNIA

20  ANDI MILLARD,                    CASE NO. C06-3911 JW/ADR
                                     Civil Rights
21           Plaintiff,

22  v.                              CONSENT DECREE AND PROPOSED
                                    ORDER
23
    PASSAGE TO INDIA RESTAURANT;
24  TANEJA, INC.; THRUST IV
    INVESTMENTS, LLC; and DOES 1-
25  25, Inclusive,

26           Defendants.

27  _____ /

28

**Consent Decree and Order:**
**Case No. C06-3911 JW/ADR**                    — 1 —                    S:\jm\Cases\P\Passage to India\pleading\passage to india consent decree.doc

**CONSENT DECREE AND ORDER**

1.       Plaintiff ANDI MILLARD filed a Complaint in this action on June 23, 2006, to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and California civil rights laws against Defendants, PASSAGE TO INDIA RESTAURANT; TANEJA, INC.; THRUST IV INVESTMENTS, LLC; and DOES 1-25, Inclusive.  Plaintiff has alleged that Defendants violated Title III of the ADA and sections 51, 52, 54.1, and 55 of the California Civil Code, and sections 19955 et seq., of the California Health and Safety Code by failing to provide full and equal access to their facilities at the Passage to India Restaurant located at 1991 W. El Camino Real, Mountain View, California, when plaintiff visited the subject facility on March 10, 2006.

2.       Defendants PASSAGE TO INDIA RESTAURANT; TANEJA, INC.; THRUST IV INVESTMENTS, LLC ("Defendants") deny the allegations in the Complaint and by entering into this Consent Decree and Order do not admit liability to any of the allegations in Plaintiff's Complaint filed in this action.  The parties hereby enter into this Consent Decree and Order for the purpose of resolving this lawsuit without the need for protracted litigation, and without the admission of any liability.

**JURISDICTION:**

3.       The parties to thisConsent Decree agree that the Court has jurisdiction of this matter pursuant to 28 USC §1331 for violations of the Americans with Disabilities Act of 1990, 42 USC 12101 et seq. and pursuant to supplemental jurisdiction for violations of California Health & Safety Code §19955 et seq., including §19959; Title 24 California Code of Regulations; and California Civil Code §§51; 52; 54; 54.1; §54.3; and 55.

4.       In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this Consent Decree agree to entry of this Order to resolve all claims regarding injunctive relief raised in the Complaint filed with this Court.  Accordingly, they agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning plaintiff's claims for injunctive relief.

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order:**
**Case No. C06-3911 JW/ADR**                     — 2 —                S:\jm\Cases\P\Passage to India\pleading\passage to india consent decree.doc

1    WHEREFORE, the parties to this Consent Decree hereby agree and stipulate to

2    the Court's entry of this Consent Decree and Order, which provides as follows:

3

4    **SETTLEMENT OF INJUNCTIVE RELIEF**:

5    5.    This Order shall be a full, complete, and final disposition and settlement of

6    Plaintiff's claims against Defendants for injunctive relief that have arisen out of the subject

7    Complaint.  The parties agree that there has been no admission or finding of liability or

8    violation of the ADA and/or California civil rights laws, and this Consent Decree and Order

9    should not be construed as such.

10    6.    The parties agree and stipulate that the corrective work will be performed in

11    compliance with the standards and specifications for disabled access as set forth in the

12    California Code of Regulations, Title 24-2 and Americans with Disabilities Act Accessibility

13    Guidelines, unless other standards are specifically agreed to in this Consent Decree and Order:

14    a)    Remedial Measures: The injunctive relief agreed upon by the Parties is attached

15    as **Attachment A** to this Consent Decree, the access report by plaintiff's consultant Jonathan

16    Adler, which is incorporated herein by reference as if fully set forth in this document.

17    Defendants agree to undertake all remedial work (identified as "Recommendations") set forth

18    in **Attachment A**.

19    b)    Timing of Injunctive Relief:  Defendants will submit plans for all corrective

20    work to the appropriate building department within 30 days of entry of this Consent Decree and

21    Order by the court, will commence work within 30 days of receiving approval from the

22    building department, and will complete work within 30 days of commencement.  For work not

23    requiring building permits, the work will be completed within 30 days of entry of this Consent

24    Decree and Order by the court.  In the event that unforeseen difficulties prevent defendants

25    from completing any of the agreed-upon injunctive relief, defendants or their counsel will

26    notify plaintiff's counsel in writing within 30 days of discovering the delay.  Defendants or

27    their counsel will notify plaintiff's counsel when the corrective work is completed, and in any

28    case will provide a status report no later than 120 days from the entry of this Consent Decree.

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order:**
**Case No. C06-3911 JW/ADR**          — 3 —          S:\jm\Cases\P\Passage to India\pleading\passage to india consent decree.doc

1    **DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES, AND COSTS:**

2              7.      The parties have not reached an agreement regarding plaintiff's claims

3    for damages, attorney fees, litigation expenses and costs.  These issues shall be the subject of

4    further negotiation, litigation, and/or motions to the Court.

5

6    **ENTIRE CONSENT ORDER:**

7              8.      This Consent Decree and Order and Attachment A to this Consent Decree,

8    which is incorporated herein by reference as if fully set forth in this document, constitutes the

9    entire agreement between the signing parties on the matters of injunctive relief, and no other

10   statement, promise, or agreement, either written or oral, made by any of the parties or agents of

11   any of the parties, that is not contained in this written Consent Decree and Order, shall be

12   enforceable regarding the matters of injunctive relief described herein.  This Consent Decree

13   and Order applies to plaintiff's claims for injunctive relief only and does not resolve plaintiff's

14   claims for damages, attorney fees, litigation expenses and costs, which shall be the subject of

15   further negotiation and/or litigation.

16

17   **CONSENT ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

18             9.      This Consent Decree and Order shall be binding on Plaintiff ANDI MILLARD,

19   Defendants, PASSAGE TO INDIA RESTAURANT; TANEJA, INC.; THRUST IV

20   INVESTMENTS, LLC; and any successors in interest.  The parties have a duty to so notify all

21   such successors in interest of the existence and terms of this Consent Decree and Order during

22   the period of the Court's jurisdiction of this Consent Decree and Order.

23

24   **MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO**

25   **INJUNCTIVE RELIEF ONLY:**

26             10.     Each of the parties to this Consent Decree understands and agrees that there is a

27   risk and possibility that, subsequent to the execution of this Consent Decree, any or all of them

28   will incur, suffer, or experience some further loss or damage with respect to the Lawsuit which

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order:**
**Case No. C06-3911 JW/ADR**                    — 4 —                    S:\jm\Cases\Passage to India\pleadings\passage to india consent decree.doc

1   are unknown or unanticipated at the time this Consent Decree is signed. Except for all

2   obligations required in this Consent Decree, the parties intend that this Consent Decree apply to

3   all such further loss with respect to the Lawsuit, except those caused by the parties subsequent

4   to the execution of this Consent Decree. Therefore, except for all obligations required in this

5   Consent Decree, this Consent Decree shall apply to and cover any and all claims, demands,

6   actions and causes of action by the parties to this Consent Decree with respect to the Lawsuit,

7   whether the same are known, unknown or hereafter discovered or ascertained, and the

8   provisions of Section 1542 of the California Civil Code are hereby expressly waived. Section

9   1542 provides as follows:

10           A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE

11           CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE

12           TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST

13           HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

14   This waiver applies to the injunctive relief aspects of this action <u>only</u> and does not include

15   resolution of plaintiff's claims for damages, attorney fees, litigation expenses and costs.

16           11.     Except for all obligations required in this Consent Decree, and exclusive of the

17   referenced continuing claims for damages, statutory attorney fees, litigation expenses and costs,

18   each of the parties to this Consent Decree, on behalf of each, their respective agents,

19   representatives, predecessors, successors, heirs, partners and assigns, releases and forever

20   discharges each other Party and all officers, directors, shareholders, subsidiaries, joint

21   venturers, stockholders, partners, parent companies, employees, agents, attorneys, insurance

22   carriers, heirs, predecessors, and representatives of each other Party, from all claims, demands,

23   actions, and causes of action of whatever kind or nature, presently known or unknown, arising

24   out of or in any way connected with the Lawsuit.

25

26   **TERM OF THE CONSENT DECREE AND ORDER**:

27           12.     This Consent Decree and Order shall be in full force and effect for a period of

28   twelve (12) months after the date of entry of this Consent Decree and Order, or until the

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order:**
**Case No. C06-3911 JW/ADR**          — 5 —          S:\jm\Cases\P\Passage to India\pleadings\passage to india consent decree.doc

1    APPROVED AS TO FORM:

2

3    Dated: November 21, 2006              PAUL L. REIN
                                            JULIE MCLEAN
4                                          LAW OFFICES OF PAUL L. REIN

5

6                                          Attorneys for Plaintiff
                                            ANDI MILLARD
7

8

9    Dated: November ___, 2006             ANTOINETTE GARY MILLS
                                            AGM LAW OFFICES
10

11

12                                         Attorneys for Defendants
                                            PASSAGE TO INDIA RESTAURANT;
13                                         TANEJA, INC.

14

15   Dated: November 20 2006               KENNETH L. DZIESINSKI
                                            BRAGG & DZIESINSKI
16

17

18                                         Attorneys for Defendant
                                            THRUST IV INVESTMENTS LLC
19

20

21                                      **ORDER**

22   Pursuant to stipulation, and for good cause shown, **IT IS SO ORDERED**.

23

24   Dated:_____

25

26

27                                         HON. JAMES WARE
                                            U.S. DISTRICT JUDGE
28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and Order: Case No. C06-
3911 JW/ADR

1   injunctive relief contemplated by this Order is completed, whichever occurs later.  The Court

2   shall retain jurisdiction of this action to enforce provisions of this Order for twelve (12) months

3   after the date of this Consent Decree, or until the injunctive relief contemplated by this Order is

4   completed, whichever occurs later.

5

6   **SEVERABILITY**:

7        13.    If any term of this Consent Decree and Order is determined by any court to be

8   unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in

9   full force and effect.

10

11  **SIGNATORIES BIND PARTIES**:

12       14.    Signatories on the behalf of the parties represent that they are authorized to bind

13  the parties to this Consent Decree and Order.  This Consent Decree and Order may be signed in

14  counterparts and a facsimile signature shall have the same force and effect as an original

15  signature.

16

17  Dated: November 3O, 2006

18

19                                                                   Plaintiff ANDI MILLARD

20

21  Dated: November __, 2006

22

23                                                                   Defendant TANEJA, INC.

24  Dated: November 15, 2006

25

26

27                                                                   Defendant THRUST IV INVESTMENTS, LLC

28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order: Case No.
C06-3911 JW/ADR**

S:\jw\Consent\Passage to India\pleadings\passage to india consent decree.doc

1   injunctive relief contemplated by this Order is completed, whichever occurs later. The Court

2   shall retain jurisdiction of this action to enforce provisions of this Order for twelve (12) months

3   after the date of this Consent Decree, or until the injunctive relief contemplated by this Order is

4   completed, whichever occurs later.

5

6   **SEVERABILITY**:

7       13.   If any term of this Consent Decree and Order is determined by any court to be

8   unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in

9   full force and effect.

10

11  **SIGNATORIES BIND PARTIES**:

12      14.   Signatories on the behalf of the parties represent that they are authorized to bind

13  the parties to this Consent Decree and Order. This Consent Decree and Order may be signed in

14  counterparts and a facsimile signature shall have the same force and effect as an original

15  signature.

16

17  Dated: November ___, 2006

18

19                                          Plaintiff ANDI MILLARD

20

21  Dated: November ___, 2006

22

23                                          Defendant TANEJA, INC.

24  Dated: November _/5_, 2006

25

26

27                                          Defendant THRUST IV INVESTMENTS, LLC

28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order: Case No.**
**C06-3911 JW/ADR**                    — 6 —                S:\jm\Cases\P\Passage to India\pleadings\passage to india consent decree.doc

1  APPROVED AS TO FORM:

2

3  Dated: November __, 2006

4

5

6

7

8

9  Dated: November 26, 2006
   *December*

10

11

12

13

14

15  Dated: November __, 2006

16

17

18

19

20

21

22

23

24  Dated:    2/12/2007

25

26

27

28

PAUL L. REIN
JULIE MCLEAN
LAW OFFICES OF PAUL L. REIN

Attorneys for Plaintiff
ANDI MILLARD

ANTOINETTE GARY MILLS
AGM LAW OFFICES

Attorneys for Defendants
PASSAGE TO INDIA RESTAURANT;
TANEJA, INC.

KENNETH L. DZIESINSKI
BRAGG & DZIESINSKI

Attorneys for Defendant
THRUST IV INVESTMENTS LLC

**ORDER**

Pursuant to stipulation, and for good cause shown, **IT IS SO ORDERED**.

HON. JAMES WARE
U.S. DISTRICT JUDGE

1   injunctive relief contemplated by this Order is completed, whichever occurs later.  The Court

2   shall retain jurisdiction of this action to enforce provisions of this Order for twelve (12) months

3   after the date of this Consent Decree, or until the injunctive relief contemplated by this Order is

4   completed, whichever occurs later.

5

6   **SEVERABILITY**:

7        13.   If any term of this Consent Decree and Order is determined by any court to be

8   unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in

9   full force and effect.

10

11  **SIGNATORIES BIND PARTIES**:

12       14.   Signatories on the behalf of the parties represent that they are authorized to bind

13  the parties to this Consent Decree and Order.  This Consent Decree and Order may be signed in

14  counterparts and a facsimile signature shall have the same force and effect as an original

15  signature.

16

17  Dated: November __, 2006

18

19                                          Plaintiff ANDI MILLARD

20
        December
21  Dated: November 8 2006

22                                          Defendant TANEJA, INC.

23

24  Dated: November __, 2006

25

26                                          Defendant THRUST IV INVESTMENTS, LLC

27

28

**Consent Decree and Order: Case No.
C06-3911 JW/ADR**                          — 6 —

**ATTACHMENT A TO CONSENT DECREE – MILLARD V. PASSAGE TO INDIA, CASE NO. C06-3911 JW/ADR**

# Passage to India
## 1991 W. El Camino Real – Mountain View,  CA

### DISABILITY ACCESS EVALUATION

Survey performed by: _____

Jonathan Adler, Principal
ACCESS COMPLIANCE SERVICES
ICBO Accessibility Inspector/Plans Examiner #0886919-21
CA Contractor Lic. #707965
(831) 429-4191

Inspection Date: 9/13/06

---

Contents:

I.  Introduction ........................................................................................................................................ 2

II. Basis For Identifying Inaccessible Features .................................................................................... 2

III. Basis For Determining The Requirement To Correct Inaccessible Features.................................. 3

IV. Inventory of Architectural Barriers .................................................................................................. 4

V. Summary Of Findings ...................................................................................................................... 10

VI.  Recommendations ......................................................................................................................... 11

VII.  List of Attachments ...................................................................................................................... 12

## I.  Introduction

The following report provides an evaluation of Passage to India Restaurant regarding compliance with the state and federal requirements concerning accessibility for persons with disabilities. The findings are based on my physical site inspection that was conducted on 9/13/06. I verified my findings by observation and measurements, and by photographing various public facilities at the restaurant, including the parking, exterior routes, building entrance, dining and the public restrooms.

Under both state law (after July 1, 1970) and the federal ADA (after January 26, 1992) newly constructed or altered facilities are required to be accessible to people with disabilities. Furthermore, performing alterations triggers additional requirements to make other features accessible that may not be directly part of the planned alteration, including but not limited to: accessible parking, an accessible building entrance and a route to it, and the restrooms that serve the altered area. A comprehensive review of the construction history and building permit records of this facility has not occurred because at this time, defense counsel states that it does not intend to claim any defenses related to the applicable obligations that are created when construction is performed. At this time the obligation to improve accessibility at the facility is based on the ADA Title III obligation to remove architectural barriers to disability access when doing so is readily achievable, regardless of when the facility was built or if it has been remodeled. Should a later review reveal a history of construction or alterations performed since 1970, Access Compliance Services reserves the right to amend the findings contained in this report to expand the basis of obligations.

## II. Basis For Identifying Inaccessible Features

• ANSI A117.1-1961 .................................................................................................................... (1970 to 1981)
American National Standards Institute standards for accessibility, as applied to public accommodations in California pursuant to Govt. Code 4450 and H&S Code 19955

• CA Code of Regulations, Title-24 Part 2, Volume 1  .............................................................. (1982 to present)
The California Building Code as applies to public accommodations, pursuant to CA Health & Safety Code 19955

• The Americans with Disabilities Act Title III–28 CFR Part 36, Appendix A.............................. (1990 to present)
The Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities

## III. Basis For Determining The Requirement To Correct Inaccessible Features

**1. Violations:** Architectural features that failed to meet the applicable state or federal regulations when they were originally constructed are required to be corrected. This applies to:

   a) Newly constructed facilities that were improperly built
   b) Alterations to existing facilities that were improperly built, with or without a permit.
   c) Path of Travel- Alterations in which an accessible path of travel was not properly provided to the altered area. Under California law since 1982, and under the ADA since 1992, the altered area was required to comply with disabled access standards in addition to another requirement that is also triggered, called *path of travel*.

*Path of travel* requires that the route to the altered area must be made accessible, which includes parking when it is provided, as well as exterior routes, an entrance, interior routes as needed, the restrooms that serve the altered area, and drinking fountains and telephones that serve the altered area. When the cost of providing the path of travel is an *unreasonable hardship*, that is it exceeds 20% of the project's total cost, the access improvements can be limited to that which can be accomplished for that amount (i.e. 20% of the total cost). However, under California law, the path of travel improvements on large projects cannot be capped based on an unreasonable hardship.  A large project is one where the cost exceeds an annually adjusted index, or where a series of projects over a three-year period cost more than that threshold.

### 2. Architectural Barriers Under The ADA

Since 1990, the Americans with Disabilities Act, at section 42 USC 12182 (b)(2)(A)(iv) has required that features that do not meet the standards for access (ADAAG), are barriers and must be corrected. This obligation applies to existing facilities regardless of the age of the building or whether any construction or alterations have been done, although special allowances may apply to truly historic buildings. The extent to which the obligation applies is limited to tasks that are "readily achievable".

There is no formulaic definition of what meets the standard of "readily achievable". It is determined in part on the "overall financial resources" of the responsible parties. It is beyond the scope of this assignment to make such a determination.

*ADA Title III Sec.36.201*
*(b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.*

Under the ADA an access barrier is "readily achievable" if the removal is "easily accomplishable and able to be carried out without much difficulty or expense." Factors to be considered when determining whether removing a barrier is "readily achievable" are set out in the ADA §301 (9) [42 USC 12181], which states:

*(9) READILY ACHIEVABLE- The term `readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include--*
   *(A) the nature and cost of the action needed under this Act;*
   *(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;*
   *(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and*
   *(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.*

## IV. Inventory of Architectural Barriers

| # | ELEMENT | BARRIER | 2001- CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECOMMENDATION |
|---|---------|---------|-----------|-----------------|-------|-------------------|-------|----------------|
| | **PARKING** | | | | | | | |
| A1 | Parking Pavement Striping and Symbols | **Striping Worn Away**<br><br>Painted striping is almost entirely worn away and not visible. | *1101B.3* | *A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be accessible to and usable by persons with disabilities.* | - - - - - - | Not directly addressed | *169* | *Re-stripe the parking spaces* |
| A2 | Parking Signage Enforcement sign | **Signage is Missing**<br><br>Tow-Away signage is not posted as required | *1129B.5* | *Tow-Away signage must be installed at each entrance to the lot or visible from each parking space. Sign must be min. 17" x 22", with min. 1" tall letters, and state: "Accessible spaces not displaying distinguishing placards or license plates issued for persons with disabilities may be towed away at owner's expense. Towed vehicles may be reclaimed at _ _ _ _ or by telephoning _ _ _ _ _ _ "* Blank spaces are to be filled in with appropriate information as a permanent part of the sign. | Not Addressed | Not addressed | *181*<br>*182* | *Install tow-away signage at each entrance to the parking lot or at a location clearly visible from each accessible parking space.* |
| A3 | Signage Parking space sign | **Van Sign is Missing**<br><br>Signage that identifies the space to the left of the access aisle as van-accessible is not posted | 1129B.5 | Van spaces must have an additional sign that states "Van Accessible". | 4.6.4 | Spaces complying with Van spaces shall have an additional sign "Van-Accessible" mounted below the symbol of accessibility | 180 | Install the required parking space signage |
| A4 | Slope of Parking Space and Aisle (grade) | **Parking Slopes Excessively** The grade of the parking spaces and access aisle ranges from a slope of 2.6% to 4.6%, | 1129B.4(3) and (4) | The entire parking space and access aisle may contain slopes no steeper than 2% in any direction. | 4.6.3 | Parking spaces and access aisles shall be level, with surface slopes not exceeding 1:50 (2%) in all directions | 178<br>179 | No Action Recommended |
| A5 | Slope of Access Aisle (Ramp encroachment) | **Curb Ramp is too Steep and Projects into Access Aisle** A "built-up" curb ramp that slopes 10.1% projects 6- ft. into the access aisle | 1129B.4(3) | The entire parking space and access aisle may contain slopes no steeper than 2% in any direction. | 4.6.3 | Parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions | 176<br>177 | Replace the "built-up" curb ramp with one that is integral with the raised sidewalk. (See DWG –01B) |

| # | ELEMENT | BARRIER | 2001- CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECOMMENDATION |
|---|---------|---------|-----------|-----------------|-------|-------------------|-------|----------------|
| A6 | Curb Ramp Slope | **Ramp Slopes Excessively**<br><br>The center, traveled portion of the curb ramp slopes 9.4% to 10.1% | 1127B.5(3) | The slope of curb ramps shall not exceed 1 unit vertical to 12 units horizontal (8.33% slope). | 4.7.2<br><br>4.8.2 | The curb ramp has a 00% running slope. The slope shall be measured as shown in <u>Fig. 11</u>.<br><br>The least possible slope shall be used for any ramp. The maximum slope of a ramp in new construction shall be 1:12 (8.33%) | 172<br>173 | See recommendation A5 |
| A7 | Curb Ramp Edge Protection | **Flared Side Slopes Excessively**<br><br>The flared side on the right side of the curb ramp slopes 14.4% | 1127B.5(3) | The slope of the fanned or flared sides of curb ramps shall not exceed 1 unit vertical to 10 units horizontal (10% slope). | 4.7.5 | If a curb ramp is located where pedestrians must walk across the ramp, or where it is not protected by handrails or guardrails, it shall have flared sides; the maximum slope of the flare shall be 1:10 (10%) (see <u>Fig. 12(a)</u>). | 174<br>175 | See recommendation A5 |
| | **EXTERIOR ROUTES** | | | | | | | |
| B1 | Route from Accessible Parking | **Cross-Slope is too steep over a 30-ft long distance.**<br><br>The cross-slope (perpendicular to the direction of travel) ranges from 3.9% at the bottom of the walkway to 7.9% at the top. | 1114B.1.2 | At least one accessible route within the boundary of the site shall be provided from public transportation stops, **accessible parking** and accessible passenger loading zones, and public streets or sidewalks, to the accessible building entrance they serve. | 4.1.2(1 | At least one accessible route complying with <u>4.3</u> shall be provided within the boundary of the site from public transportation stops, <u>accessible parking spaces</u>, passenger loading zones if provided, and public streets or sidewalks, to an accessible building entrance | 207<br>210<br>211 | Rebuild walkway so that the cross-slope does not exceed 2%<br><br>See DWG-01B |
| | | | 1133B.7.1.3 | Maximum 2% cross-slope<br><br>Surface cross slopes. Surface cross slopes shall not exceed 1/4" per foot except when the enforcing agency finds that due to local conditions it creates an unreasonable hardship, the cross slope shall be increased to a maximum of 1/2" per foot for distances not to exceed 20 feet (2.5% gradient). | 4.3.7 | Nowhere shall the cross slope of an accessible route exceed 2% (1:50). | | |

| # | ELEMENT | BARRIER | 2001- CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECOMMENDATION |
|---|---------|---------|-----------|-----------------|-------|-------------------|-------|----------------|
| B2 | Route From Sidewalk | **No Handrails Provided**<br><br>The slope in the direction of travel ranges from 6.3% to 8.0% over a 46-ft long distance, and no handrails are provided. | 1133B.7.3 | Five percent gradient.  When the slope in the direction of travel of any walk exceeds 1 unit vertical to 20 units horizontal (5% gradient), it shall comply with the provisions of Section 1133B.5 | 4.8.1 | Any part of an accessible route with a slope greater than 1:20 shall be considered a ramp and shall comply with 4.8 | 213 | See DWG-01B |
|  |  |  | 1133B.5.5.1 | Handrails are required on both sides of each ramp | 4.8.5 | Handrails are required on both sides of a ramp that rises more than 6-in. or projects horizontally more than 72-in. |  |  |
| | **ENTRANCES** | | | | | | | |
| C1 | Exterior Door Landing | **Landing Slopes too Steeply**<br><br>The slope of the exterior door landing ranges from 7.7% to 9.3% | 1133B.2.4.2 | Minimum maneuvering clearances at doors shall be as shown in Figure 11B–26A and 11B–26B. The floor or ground area within the required clearances **shall be level** and clear. The level area shall have a length in the direction of door swing of at least 60 inches (1524 mm) and the length opposite the direction of door swing of 48 inches (1219 mm) as measured at right angles to the plane of the door in its closed position. | 4.13.6 | Minimum maneuvering clearances at doors that are not automatic or power-assisted shall be as shown in **Fig. 25**. The floor or ground area within the required clearances shall be level and clear. | 215 216 | Rebuild walkway so that the portion containing the door landing does slope more than 2%<br><br>See DWG-01B |
| C2 | Exterior Door Pressure | **Door Pressure is too High**<br><br>10-lbs. of force is needed to open the door between the exterior and the airlock vestibule | 1133B.2.5 | Maximum effort to operate doors may not exceed 5-pounds) for exterior and interior doors,<br><br>When fire doors are required, the maximum effort to operate the door may be increased to the minimum allowable by the appropriate administrative authority, not to exceed 15 pounds. | - - - - - | Not Addressed by ADAAG | NP | Adjust the door pressure to not exceed 8-1/2 lbs. (5-lb if alterations were performed since November 1, 2002 |
| C3 | Interior Door Pressure | **Door Pressure is too High**<br><br>15-lbs. of force is needed to open the door between the airlock vestibule and the interior of the restaurant. | 1133B.2.5 | Maximum effort to operate doors may not exceed 5-pounds) for exterior and interior doors, | 4.13.11 | Maximum effort to operate interior doors may not exceed 5-pounds. | NP | Adjust door closer to require no more than 5 lbs. of pressure to open |

| # | ELEMENT | BARRIER | 2001- CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECOMMENDATION |
|---|---------|---------|-----------|-----------------|-------|-------------------|-------|----------------|
| **WOMENS RESTROOM** | | | | | | | | |
| D1 | Signage | **No Tactile Signage Displayed**<br><br>Raised character and Braille signage is not provided. | 1117B.5.7 | Where permanent identification is provided for rooms and spaces, raised letters and numerals shall be provided and shall be accompanied by Braille | 4.30.4 | Raised letters and numerals shall be accompanied with Grade 2 Braille. | 185 | Install required signage |
| D2 | Signage | **No Symbol of Access is Displayed**<br><br>The International Symbol of Access is not displayed | 1117B.5.8.1 | The International Symbol of Accessibility (ISA) shall be the standard used to identify facilities that are accessible to and usable by physically disabled persons. | 4.30.7<br>Fig. 43 (a)(b) | Facilities and elements required to be identified as accessible by 4.1 shall use the international symbol of accessibility. | 185 | Install required signage |
| D3 | Entry Door Pressure | **Entry Door Pressure is too High**<br><br>13.5 lbs. of force is needed to open the door between the airlock vestibule and the interior of the restaurant. | 1133B.2.5 | Maximum effort to operate doors may not exceed 5-pounds) for exterior and interior doors, | 4.13.11 | Maximum effort to operate interior doors may not exceed 5-pounds. | NP | Adjust door closer to require no more than 5 lbs. of pressure to open |
| D4 | Entry Door Strike-Edge Pull-side Interior | **Maneuvering Space Deficient**<br><br>Door landing extends only 12-1/2" beyond the edge of the door before toilet stall obstructs it. | 1133B.2.4. | On the side toward which an interior door swings, 18" of clear space is required beyond the strike-edge (latch side) of the door | 4.13.6 | On the side toward which an interior door swings, 18" of clear space is required beyond the strike-edge (latch side) of the door | 188<br>189 | Move the door laterally; away from toilet stall and toward the lavatory counter a distance of 5-1/2 inches.<br><br>Note: There is 7-1/2 inch of space between the doorframe in its existing location and the outer edge of the counter. |
| D5 | Accessible Toilet Stall - Width | **Toilet Stall is Too Narrow**<br><br>The accessible toilet stall is only 57-1/4" wide measured at the back wall and 58-1/2" wide at the end of the stall with the door. | - - - - - - - | Total width of the stall is not addressed by CBC | 4.17.3 and figure 30(a) | Toilet stall must be minimum 60-inch wide. | NP | Widen the accessible toilet stall by simply moving the modular partition between it and the adjacent non-accessible stall. |
| D6 | Toilet Stall Door | **Toilet Stall Door Hardware**<br><br>Pull handles are not provided. | 1115B.7.1.4 | The inside and outside of the compartment door shall be equipped with a loop or U–shaped handle. | N/A | Not addressed. | 187 | Attach loop pull-hardware |

| # | ELEMENT | BARRIER | 2001- CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECOMMENDATION |
|---|---------|---------|-----------|-----------------|-------|-------------------|-------|----------------|
| **MENS RESTROOM** | | | | | | | | |
| E1 | Signage | **No Tactile Signage Displayed**<br><br>Raised character and Braille signage is not provided. | 1117B.5.7 | Where permanent identification is provided for rooms and spaces, raised letters shall be provided and shall be accompanied by Braille | 4.30.4 | Raised letters and numerals shall be accompanied with Grade 2 Braille. | 192 | Install required signage |
| E2 | Signage | **Symbol of Access**<br><br>The International Symbol of Access is not displayed | 1117B.5.8.1 | The International Symbol of Accessibility (ISA) shall be the standard used to identify facilities that are accessible to and usable by physically disabled persons. | 4.30.7<br>Fig. 43 (a)(b) | Facilities and elements required to be identified as accessible by 4.1 shall use the international symbol of accessibility. | 192 | Install required signage |
| E3 | Entry Door Pressure | **Entry Door Pressure is too High**<br><br>13.5 lbs. of force is needed to open the door between the airlock vestibule and the interior of the restaurant. | 1133B.2.5 | Maximum effort to operate doors may not exceed 5-pounds) for exterior and interior doors, | 4.13.11 | Maximum effort to operate interior doors may not exceed 5-pounds. | NP | Adjust door closer to require no more than 5 lbs. of pressure to open |
| E4 | Entry Door Landing Depth Pull Side | **Door Landing Too Shallow**<br><br>Depth of landing is 51-in. deep before it is obstructed by the end-wall of the lavatory cabinet | **1133B.2.4.2** | *The level area must have a length in the direction of door swing of at least 60 inches as measured at right angles to the plane of the door in its closed position.* | 4.13.6 | • *60-in. pull-side forward approach*<br><br>• *60-in. pull-side hinge approach if strike-edge is less than 36-in.*<br><br>• *54-in. pull-side hinge approach if strike-edge is min. than 42-in.*<br><br>• *54-in. pull-side latch approach if door has a closer*<br><br>• *48-in. pull-side latch approach if door does not have latch and closer* | 194<br>195<br><br>See<br>DWG-03A | Replace the countertop sink with a wall-hung lavatory. |

| # | ELEMENT | BARRIER | 2001- CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECOMMENDATION |
|---|---------|---------|-----------|-----------------|-------|-------------------|-------|----------------|
| E5 | Accessible Toilet Stall - Length | **Toilet Stall is too Short**<br><br>The side-entered stall, that has floor-mounted toilet and a door that swings into the compartment, is only 86-in. long.<br><br>a) The stall yields only 56-in. of clear space in front of the toilet.<br><br>b) The distance from the wall that is behind the toilet to the edge of the door opening is only 45-in. long | 1115B.7.1.3 | a) A minimum 60" long clear space shall be provided in a compartment with the door located at the side. | 4.17.3<br>Fig. 30 (a.1) | b) The distance from the back wall to the edge of the door opening must be minimum 59-in. long, when the toilet is floor-mounted and the door swings into the stall. | NP<br><br>See DWG-03A | Reverse the door swing so that it opens outward. This would fully meet the barrier-removal requirements under the ADA, and substantially meet the standards of CA building code. |
| E6 | Toilet Stall Door | **Toilet Stall Door Hardware**<br><br>Pull handles are not provided and the door swings open when it is not latched. | 1115B.7.1.4 | The inside and outside of the compartment door shall be equipped with a loop or U–shaped handle and the door shall be self-closing. | N/A | Not addressed. | 197<br>198 | Attach loop pull-hardware |
| E7 | Toilet Location | **Toilet is too close to the Side-wall**<br><br>The centerline of the toilet is 16-3/8 inch from the adjacent near wall. | 1115B.7.1.3 | 18" minimum/maximum | Fig. 28 | 18" minimum/maximum | NP<br><br>See DWG-03A | No action recommended. |
| E8 | Dispensers | **Soap is Too High**<br><br>The operable part of the dispenser is 48-in. above the floor. | 1115B.9.2 | Towel, sanitary napkins, waste receptacles. Where towel, sanitary napkins, waste receptacles, and other similar dispensing and disposal fixtures are provided, at least one of each type shall be located with all operable parts, including coin slots, within 40" AFF. | 4.27.3<br><br>4.2.5 & 6 | Dispenser complies with ADAAG | 200 | Lower the soap dispenser 8-inches. |

## V. Summary Of Findings

✦ <u>Parking:</u>
Required signage is not posted
Pavement striping is worn away and not visible
Parking spaces and access aisle slope excessively
Curb ramp is too steep and it encroaches into the access aisle, which is prohibited


✦ <u>Exterior Routes</u>: **(See Drawing 01A):**
Route from parking has steep cross-slopes
Route from public sidewalk is a ramp that does not provide required handrails


✦ <u>Building Entrances</u>: **(See Drawing 01A):**
Exterior door landing slopes as much as 4 times the maximum allowable
Exterior door to the air-lock entry door requires excessive force to open
Interior door from the air-lock entry door requires excessive force to open


✦ <u>Women's Restroom</u> **(See Drawing 02A):**
Required signage is not posted
Force needed to open the entry door is twice the maximum allowable
Maneuvering space adjacent to the door is approximately 6-inch narrower than the minimum required.
Accessible toilet stall is 3-inch narrower than the minimum required
Door to the accessible stall lacks required pull-hardware


✦ <u>Men's Restroom</u> **(See Drawing 03A):**
Required signage is not posted
Force needed to open the entry door is almost three times the maximum allowable
Door landing on the interior side is 9-inch shorter than required because it is obstructed by a cabinet
Accessible toilet stall is too short and its use is further hindered by the fact that the door to the stall swings inward
Toilet is installed 1-1/2" closer to the near sidewall than is allowed.
Door to the accessible stall lacks required pull-hardware and does not self-close
Soap dispenser is installed too high.


Passage to India: Disability Access Evaluation                                              10

## VI.  Recommendations

Parking:
    Install required signage is not posted
    Restripe
    Replace the "built-up" curb ramp with one that is integral to the raised walkway


Exterior Routes: **(See Drawing 01A):**
    Rebuild the upper portion of the concrete flatwork so that it slopes no steeper than 2%


Building Entrances: **(See Drawing 01A):**
    Rebuild the upper portion of the concrete flatwork (which includes the door landing) so that it slopes no steeper than 2%
    At both entry doors, adjust the closers to the required pressure, or install power door openers.


Women's Restroom **(See Drawing 02A):**
    Install required signage
    Adjust door closer to require no more than 5-lb. pressure to open
    Create minimum 18-inch clearance on the strike-side of the door by moving the door approximately 6-inch toward the lavatory counter.
    Widen the accessible toilet stall by moving the modular partition approximately 3-inch.
    Install required pull-hardware on both sides of the door to the accessible toilet stall.


Men's Restroom **(See Drawing 03A):**
    Install required signage
    Adjust door closer to require no more than 5-lb. pressure to open
    Replace sink cabinet with a wall-hung fixture
    On the accessible stall, reverse the door swing so that it opens outward and self-closes, and install required door-pull hardware
    Lower the soap dispenser to 40-inch height.

## VII.  List of Attachments

• PHOTOGRAPHS per Part IV: Inventory of Barriers

• DRAWING-01A    Existing Exterior Routes and Entrance
• DRAWING -01B    Recommendations - Exterior Routes and Entrance


• DRAWING -02A    Existing – Women's Restroom
• DRAWING -02B    Recommendations - Women's Restroom


• DRAWING -03A    Existing – Men's Restroom
• DRAWING -03B    Recommendations - Men's Restroom